[No. 11249-7-III.    Division Three.    July 28, 1992.]

HUBERTUS GUENTHER, ET AL, *Respondents,* v. MELVIN FARISS, ET AL, *Appellants.*

*Robert H. Whaley, Mary Ellen Gaffney-Brown, Matthew T. Halliday,* and *Winston & Cashatt,* for appellants.

*Milton G. Rowland* and *Paine, Hamblen, Coffin, Brooke & Miller,* for respondents.

THOMPSON, J. — Vista II is a limited partnership formed in 1986 by Hubertus and Tanya Guenther and the late Grant Groesbeck as general partners and Melvin Fariss as a limited partner. In this action for declaratory relief, the Guenthers obtained an order of summary judgment fixing their ownership interest in the limited partnership and its profits at 75 percent and Mr. Fariss' interest at 25 percent. Mr. Fariss appeals, contending the parties amended their limited partnership agreement after the death of Mr. Groesbeck to enlarge Mr. Fariss' share of the partnership profits to 40 percent. We hold the amendment was not supported by sufficient consideration and, therefore, affirm the order

of summary judgment in favor of the Guenthers. However, we agree with Mr. Fariss that Vista II was not a proper party to the declaratory judgment action. Thus, we reverse the Superior Court's denial of his motion to strike Vista II.

In 1986, the Guenthers, Mr. Groesbeck and Mr. Fariss formed Vista II to develop the Suntree Inn Motel on commercial real property located at the corner of Second Avenue and Division Street in Spokane. Mr. Fariss owned the real property, valued at $501,600, subject to an encumbrance of $85,400, which the partnership agreed to assume. He contributed $214,000 of the value of the property to the partnership. The Guenthers and Mr. Groesbeck paid Mr. Fariss $202,600 for his equity in the property, as evidenced by promissory notes on which they were jointly and severally liable. They then contributed their interest in the land to the partnership, together with their services as architect and as developer. Shares of the partnership net income were set at 37.5 percent each for the Guenthers and Mr. Groesbeck, and 25 percent for Mr. Fariss.

Mr. Groesbeck died on June 13, 1987, when the motel was only partially completed. The Guenthers finished construction, and the motel opened on September 1, 1987. Mr. Fariss filed a creditor's claim in the Groesbeck estate on September 21, for the unpaid promissory notes. After the estate's attorney advised him Mr. Groesbeck did not have the net worth he represented he had when the limited partnership was formed in 1986, Mr. Fariss filed an additional creditor's claim for damages resulting from fraud or misrepresentation.

In February 1988, the Guenthers filed a petition in the probate court for the transfer of the estate's interest in Vista II to them without consideration. At a hearing on the petition for transfer, the estate's attorney told the court that at the time of Mr. Groesbeck's death, the indebtedness of Vista II exceeded its value. Article 12 of the parties' limited partnership agreement provided that upon the withdrawal of a general partner, the remaining general partner or partners had the first option to purchase the interest of the

withdrawing partner at fair market value. If a partner died, the remaining partners could likewise elect to purchase the interest of that partner under the terms set forth in article 12. See article 13.

Because Mr. Fariss disputed the assessment that the estate's interest in Vista II had no value, the court continued the hearing on the Guenthers' petition. In the meantime, the partnership encountered problems with finalization of its Small Business Administration loan. Mr. Fariss' counsel attests the Guenthers suggested that to ensure continued financing of the project, it would be in the best interest of the partnership for Mr. Fariss to release his claims against the estate and allow the Guenthers to assume Mr. Groesbeck's obligations to him.

Another hearing on the petition for transfer was set for October 25, 1988. That morning, the Guenthers, Mr. Fariss, and their counsel met and negotiated an agreement which was reduced to writing and signed November 14. The agreement recited:

> [T]he personal representative of the Groesbeck estate has indicated that the estate is insolvent and cannot meet the Groesbeck obligations under the Partnership Agreement nor under the notes payable to Fariss related to the partnership;

The agreement also stated Mr. Groesbeck's interest in Vista II had a negative value at the time of his death. Mr. Fariss therefore agreed to release the estate from his claims and join in the petition in probate court for the transfer of the estate's interest in Vista II to the Guenthers. In return, the Guenthers agreed to hold the estate's share in trust upon the following terms: (1) The Guenthers and Mr. Fariss would immediately seek to find a new general partner to purchase the trust interest; (2) Vista II would require sufficient cash from the new general partner to pay Mr. Fariss at least one-half of the principal and interest owed on the notes for $202,600 executed by the Guenthers and Mr. Groesbeck in 1986; and (3) until such time as a new general partner was admitted to the partnership, any profits would be shared 40 percent by Mr. Fariss and 60 percent by the Guenthers.

At the court hearing on October 25, Mr. Fariss' attorney advised the court that Mr. Fariss and the Guenthers had settled their differences. Counsel requested and was granted time to negotiate a settlement with Ferman Pasold, Mr. Groesbeck's partner in an architectural firm and also a creditor in the Groesbeck estate. Once a minor contingency in the Pasold settlement was satisfied, the probate court entered an order transferring the estate's interest in the partnership to the Guenthers. The order did not mention the parties' November agreement.

In July 1989, the Guenthers told Mr. Fariss they intended to pay the promissory notes in full and own free of trust the interest they had procured from the Groesbeck estate. Mr. Fariss responded that the trust with the partnership interest divided on a 40/60 percentage basis continued until such time as a new general partner was added. When the Guenthers paid the notes, Mr. Fariss negotiated their check with a reservation of rights.

In November 1989, the Guenthers commenced this action for declaratory relief. Their complaint stated:

A controversy exists between the parties . . . as to the effect of [the November 14, 1988] agreement. The plaintiffs [Guenthers] seek a declaration from the Court determining that they can acquire and retain ownership of deceased Groesbeck's 37½% interest, free of trust, along with their own, for a total ownership of 75% as general partners with the remaining 25% ownership to remain with Melvin Fariss as contemplated by the original Limited Partnership Agreement . . .[.]

Both parties moved for summary judgment. Mr. Fariss also moved to strike Vista II as a party. The Superior Court granted the Guenthers' motion and denied Mr. Fariss' motions.

On appeal, Mr. Fariss contends the Superior Court erred in entering the order of summary judgment for the Guenthers. The court's order does not reflect the basis on which it was granted, but the record indicates the Guenthers presented two theories to the Superior Court. They argued (1) the probate court order transferring the estate's interest to them effectively superseded the November 1988 agreement, and (2) in any event, the agreement was not supported by

sufficient consideration. Since we hold that Mr. Fariss' consideration for the November 1988 agreement was insufficient, we do not address the effect of the probate court order on the agreement.[1]

■ Consideration is any act, forbearance, creation, modification or destruction of a legal relationship, or return promise given in exchange. *Emberson v. Hartley*, 52 Wn. App. 597, 601, 762 P.2d 364 (1988) (citing *Huberdeau v. Desmarais*, 79 Wn.2d 432, 439, 486 P.2d 1074 (1971)), *review denied*, 112 Wn.2d 1007 (1989). Courts rarely inquire into the adequacy of consideration, *i.e.*, the comparative value of the promises and acts exchanged. *Browning v. Johnson*, 70 Wn.2d 145, 147, 422 P.2d 314, 430 P.2d 591 (1967). But "adequacy" is distinguished from the legal "sufficiency" of consideration. "The latter phrase is concerned not with comparative value but with that which will support a promise." *Browning*, at 147 (citing 1 S. Williston, *Contracts* § 115 (3d ed. 1957)).

■ The question here is whether Mr. Fariss' promise to release his claims against the estate and join in the petition for transfer of the estate's interest to the Guenthers constitutes legally sufficient consideration. It has been held that the surrender of a valid claim against an insolvent estate or an insolvent corporation is not sufficient consideration to support the promise of a third person. *State ex rel. Ludwick v. Bryant*, 237 Kan. 47, 52-53, 697 P.2d 858, 862-63 (1985); *Newman & Snell's State Bank v. Hunter*, 243 Mich. 331, 220 N.W. 665, 59 A.L.R. 311 (1928). Whether the entity that owes the debt is viable is determinative, not the validity of the debt. *Ludwick*, at 52. If there exists no possibility of enforcement and collection, both the claim and the forbearance are valueless. 1 A. Corbin, *Contracts* § 140, at 601 (1963). *See also* Annot., *Surrender of Claim Against Insol-*

---

[1] In his brief on appeal, Mr. Fariss asserts the Superior Court based its decision on a determination the settlement agreement merged into the probate court's order. (See Brief of Appellant, at 11.) However, we can sustain the summary judgment on grounds different from those relied upon by the Superior Court where those grounds are established by the pleadings and supported by the uncontroverted facts in the record. *See Masunaga v. Gapasin*, 52 Wn. App. 61, 68, 757 P.2d 550 (1988).

*vent as Consideration for Promise by Third Person*, 59 A.L.R. 315, 317-23 (1929).

As set forth above, the parties' 1988 agreement recited that "the personal representative of the Groesbeck estate has indicated that the estate is insolvent . . .". Since Mr. Fariss could not have collected on either of his claims due to the insolvency of the estate, his promise to release those claims was valueless. We recognize the release provided the impetus for the estate to transfer its interest in Vista II to the Guenthers without further delay. The release therefore benefited the Guenthers (and Mr. Fariss) by allowing them to proceed in a timely fashion with finalization of their Small Business Administration loan, which had stalled as a result of the probate. But as a matter of public policy, the existence of such a benefit to the promisee is not sufficient consideration. If courts were to recognize the release of valueless claims as sufficient consideration, they would encourage persons to assert such claims in order to gain advantage in their dealings with third parties who are affected by maintenance of the claims. Nuisance value is not a value that the courts should credit. 1 A. Corbin, at 596-98.

Nor is Mr. Fariss' promise to join in the petition for transfer of the estate's interest to the Guenthers sufficient consideration. The 1988 agreement stated Mr. Groesbeck's interest in Vista II had a negative value at the time of his death. Thus, Mr. Fariss effectively admitted the Guenthers were entitled to the estate's interest without payment, under the terms of article 12 of the limited partnership agreement.

In summary, we hold Mr. Fariss' promise did not constitute sufficient consideration to support the November 1988 agreement. Consequently, the Guenthers acquired the estate's 37.5 percent interest, free of trust, for a total interest in the partnership of 75 percent. Mr. Fariss' interest is 25 percent.

The remaining issue concerns the court's denial of Mr. Fariss' motion to strike Vista II as a party plaintiff. Mr. Fariss contends the only reason the Guenthers included Vista II was to force the partnership to bear the fees and costs of the declaratory judgment action.

■ The Uniform Declaratory Judgments Act provides that "all persons shall be made parties [to the action for declaratory relief] who have or claim any interest which would be affected by the declaration . . .". RCW 7.24.110.[2] The Guenthers hypothesize several situations in which operation of the partnership may be affected by the court's declaration of the parties' rights under the 1988 agreement. For example, the percentage of each partner's interest in the partnership determines the amount accessible by the partnership to pay judgment creditors of individual partners. *See* RCW 25.10.410. But an effect on operation is not the equivalent of an effect on an interest of the partnership, as that term is used in RCW 7.24.110. Here, the interests at stake are purely the individual interests of the Guenthers and Mr. Fariss. Vista II had no separate interest in the action.

Accordingly, the court should have granted Mr. Fariss' motion to strike Vista II as a party. Since no relief was granted Vista II, the denial of the motion to strike did not adversely impact Mr. Fariss in this action. Our reversal of the court's disposition of the motion simply means the Guenthers cannot use it in a later action for accounting to support a decision to pay its attorney out of partnership assets. We reform the summary judgment to delete Vista II as a party and to reflect entry in favor of the Guenthers only.

Affirmed in part and reversed in part.

SHIELDS, C.J., and MUNSON, J., concur.

Review denied at 120 Wn.2d 1028 (1993).

---

[2]The definition of "person" includes "partnership". RCW 7.24.130.