[No. 60820-2.   En Banc.   July 28, 1994.]

*In the Matter of the Estate of* KENNETH LEE BURMEISTER.

JEANNE BURMEISTER, *Respondent*, v. LEANNE J. GRIFFITH, *as Personal Representative*, ET AL, *Petitioners.*

*Newton Kight* and *Thomas D. Adams,* for petitioners.

*James U. Bittner* (of *Kasperson & Bittner, P.S.*), for respondent.

DOLLIVER, J. — Petitioners Leanne Griffith, Heidi L. Payseno, Tamara J. Benz, and Kim D. Pratt, daughters of the deceased, Kenneth L. Burmeister, seek review of the Court of Appeals decision revoking Burmeister's will as to his surviving spouse, Respondent Jeanne Mliner Bur-

meister. They assert the court erred in construing RCW 11.12.050 to provide for the revocation of an antenuptial will as to the surviving spouse unless the "provision" made for that spouse in a marriage settlement is beneficial. We agree and reverse.

Kenneth L. Burmeister and Janet Ann Burmeister executed reciprocal wills in 1977. The Burmeisters' four daughters were contingent beneficiaries. Upon Janet Ann Burmeister's death in 1988, the daughters became primary beneficiaries under their father's will.

Kenneth Burmeister married the Respondent, Jeanne Mliner, on May 11, 1990. Prior to the marriage, the parties executed a prenuptial agreement which provided:

> In the event of the death of either party, the parties agree that neither party shall claim the right to inherit the separate and/or community one-half of the property of the deceased spouse, unless provided for by Will or Trust Agreement executed by the deceased spouse. . . .

Clerk's Papers, at 97. The agreement also provided that Mliner waived her right to an award in lieu of homestead and a family allowance. At the time the agreement was executed, Kenneth Burmeister's separate property was valued at $2,092,000 and Mliner's totaled $128,100.

Prior to the marriage, Mliner quit her job as a flight attendant for Northwest Airlines where she had 24 years of seniority, a substantial salary, and benefits. Both parties understood Mliner's resignation would result in the permanent loss of her seniority status and rights. Accordingly, the parties amended the prenuptial agreement to provide that in the event of divorce, Kenneth Burmeister would,

> subject to his then ability to pay and her then need for maintenance[,] . . . compensate JEANNE M. MLINER through payment to her of a sum sufficient to sustain and support her at a level enjoyed by her immediately prior to the marriage.

Clerk's Papers, at 104. The amendment did not provide for Mliner in the event of Kenneth's death. On appeal, the parties do not dispute the validity of the prenuptial agreement or the amendment.

On October 22, 1990, approximately $5^1/2$ months after the marriage, Kenneth Burmeister died. Burmeister's 1977 will was never amended to include Mliner. Mliner was unable to resume her employment with Northwest Airlines and is currently working three jobs with an income totaling approximately $18,000.

Mliner filed a petition for award in lieu of homestead, a petition for family allowance, a petition to declare prenuptial agreement invalid, and a complaint to enforce contract to execute will. The trial court held the prenuptial agreement was valid and binding, denied her petitions, and dismissed the complaint. The court also held the prenuptial agreement did not make "provision" for Mliner, pursuant to RCW 11.12.050, and therefore, the will was revoked as to her and she was entitled to the surviving spouse's intestate share. The trial court granted attorney fees to both parties to be assessed against the estate.

The four daughters appealed the revocation. Mliner cross-appealed on the attorney fees issue. The Court of Appeals affirmed the trial court on both issues. *In re Estate of Burmeister*, 70 Wn. App. 532, 854 P.2d 653 (1993). The daughters' Petition for Review of the revocation issue was granted by this court.

RCW 11.12.050 (repealed by Laws of 1994, ch. 221, § 72, p. 1179, effective Jan. 1, 1995) provides:

> If, after making any will, the testator shall marry and the spouse shall be living at the time of the death of the testator, such will shall be deemed revoked as to such spouse, unless provision shall have been made for such survivor by marriage settlement, or unless such survivor be provided for in the will or in such way mentioned therein as to show an intention not to make such provision, and no other evidence to rebut the presumption of revocation shall be received. . . .

The parties agree Kenneth Burmeister's will does not provide for Mliner or mention her therein. The parties also do not dispute that a prenuptial agreement constitutes a "marriage settlement" under RCW 11.12.050. *See In re Estate of McKiddy*, 47 Wn. App. 774, 778, 737 P.2d 317 (1987) (citing *In re Estate of Nelson*, 85 Wn.2d 602, 612-13, 537 P.2d 765

(1975)). The sole issue is whether disinheriting a spouse in a marriage settlement makes "provision" for that spouse under RCW 11.12.050.

In an early case, this court held the disinheritance of a surviving spouse in an oral prenuptial agreement did not constitute a "provision" under RCW 11.12.050. *See Koontz v. Koontz*, 83 Wash. 180, 182, 145 P. 201 (1915).

In *Koontz*, the decedent had executed a will bequeathing all of his property to his two sons a year prior to remarrying. The will was not revised or replaced after the marriage. Following Mr. Koontz's death, his two sons introduced evidence of an oral prenuptial agreement that the surviving spouse would not claim an interest in the estate. The court held the prenuptial agreement, if valid, did not make "provision" for the surviving spouse.

> Proof of a [marriage] settlement such as that here advanced denying her any provision from his own property even as his heir, would not be sufficient since such a settlement would make no provision for her, but quite the contrary. It would take away that provision which, but for the agreement, the law would give her. . . .

*Koontz*, 83 Wash. at 183.

The Petitioners contend the interpretation in *Koontz* was erroneous, arguing "provision" means only that the decedent made prior preparations for the surviving spouse in the marriage settlement by stating what interest in the estate, if any, the spouse was to receive. They argue the court is not bound by its prior decision because the interpretation given to "provision" in *Koontz* is contrary to its intended meaning. *See In re Estate of Bordeaux*, 37 Wn.2d 561, 564-65, 225 P.2d 433, 26 A.L.R.3d 249 (1950) (when prior judicial interpretation is erroneous, stare decisis does not compel adherence to decision).

The plain meaning of "provision" provides some support for the Petitioners' view. "Provision" is defined as "the quality or state of being prepared beforehand" or "a measure taken beforehand". *Webster's Third New International Dictionary* 1827 (1986). The marriage settlement is clearly an

act made in preparation for the potential death of either spouse.

The term is also defined as "a gift by will or deed to one as heir who would not be heir otherwise . . .";. *Webster's*, at 1827. The use of the word "gift" tends to support Mliner's interpretation. This definition, however, is inapplicable because the marriage settlement in this case is not a will or deed. *See* RCW 26.16.120. *See generally* 23 Am. Jur. 2d *Deeds* § 10 (1983). In addition, we disagree "provision" must be interpreted identically with the phrase "provided for", which requires some beneficial interest. *See In re Estate of Ridgeway*, 33 Wn.2d 249, 254, 205 P.2d 360 (1949). That phrase has a technical meaning in the will context which has recently been codified in the omitted spouse and pretermitted heir statutes. *See* Laws of 1994, ch. 221, §§ 9, 10, p. 1143.

■■ The recent repeal of RCW 11.12.050 provides additional support for the Petitioners' view. *See Seattle v. Public Empl. Relations Comm'n*, 116 Wn.2d 923, 927 n.1, 809 P.2d 1377 (1991) (new standard is relevant in interpreting repealed statutory language). Following the Court of Appeals' application of *Koontz*, the Legislature acted quickly to repeal RCW 11.12.050 and enacted a new section allowing courts to consider any "clear and convincing evidence that the failure [to provide for an omitted spouse] was intentional." Laws of 1994, ch. 221, § 10(1), p. 1143. This legislative action is consistent with the sole purpose of RCW 11.12.050 to guard against *unintentional* disinheritance of a surviving spouse. *See In re Estate of Steele*, 45 Wn.2d 58, 61, 273 P.2d 235 (1954).

■ Given the ordinary meaning of "provision" and the Legislature's quick repeal of RCW 11.12.050 following the Court of Appeals' application of *Koontz* in this case, we hold the term "provision" does not require a beneficial interest, but may consist of a clear written intention in a marriage settlement to disinherit a surviving spouse. " '[T]he spirit and intent of the statute should prevail over the literal letter of the law' and 'there should be made that interpretation

which best advances the perceived legislative purpose.' " *Martin v. Triol*, 121 Wn.2d 135, 143, 847 P.2d 471 (1993) (quoting *Wichert v. Cardwell*, 117 Wn.2d 148, 151, 812 P.2d 858 (1991)); *Morris v. Blaker*, 118 Wn.2d 133, 142, 821 P.2d 482 (1992). We are aware RCW 11.12.050 was amended in 1965 without altering the disputed language, but find such legislative silence is not controlling under the circumstances presented by this case. *See Pringle v. State*, 77 Wn.2d 569, 573, 464 P.2d 425 (1970).

We reverse the Court of Appeals and hold Kenneth Burmeister's will is not revoked as to Jeanne Mliner. We decline to award attorney fees to the Respondent.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.

Reconsideration denied September 12, 1994.