[No. 13077-1-III. Division Three. April 18, 1995.]

*In the Matter of the Estate of* GEORGIA MOE HANSEN.

ORVILLE L. MOE, *Appellant*, v. LYLE K. HANSEN, *Respondent*.

*Robert E. Kovacevich,* for appellant.
*John H. McRae,* for respondent.

THOMPSON, C.J. — Orville Moe, as personal representative of the estate of his mother, Georgia Moe Hansen, appeals the judgment of the Superior Court awarding Lyle K. Hansen one-half of Mrs. Hansen's separate estate and deeming certain real estate to be community property. In addition to challenging the sufficiency of the evidence to support the community property determination, Mr. Moe contends the court erred in: (1) concluding Mrs. Hansen's antenuptial will was revoked as to Mr. Hansen and that a prenuptial agreement was not a marriage settlement saving the will, and (2) refusing to apply the doctrine of equitable estoppel to defeat revocation of the will. We affirm.

Georgia Hansen died testate in Spokane County on May 13, 1991. Her last will, executed prior to her marriage to Mr. Hansen, does not mention or make provision for any spouse. At the time she executed her will, Georgia was the sole beneficiary of her late husband, Clarence Moe, who died December 18, 1973. The designated heirs under her will are the adult sons of her marriage to Clarence Moe — Earl Moe, Maynard Moe, and Appellant Orville L. Moe.

Georgia married Lyle Hansen on October 14, 1975. They remained married until her death. On September 25, 1975, they executed a prenuptial agreement, which provided:

[E]ach party to this agreement relinquishes and waives any claim which each may now have or hereafter acquire against the separate property of the other.

At the time the agreement was executed, Mr. Hansen was aware his intended wife owned her home on Kiernan Avenue and her family operated a fuel business out of that residence. He also knew she was experiencing problems with the IRS concerning the estate of Clarence Moe. On several occasions Mr. Hansen was present in the room during discussions that were held between her and her sons concerning the family business. However, Mr. Hansen testified he was not specifically informed of the nature, character or extent of Mrs. Moe's separate property at the time he signed the prenuptial agreement, and the court so found. Her estate, now worth an estimated $400,000, consists primarily of separate property inherited from Clarence Moe, which she maintained as her separate property throughout the marriage.

The court concluded the prenuptial agreement was not a marriage settlement because it was invalid. Mr. Hansen executed it without Mrs. Hansen fully disclosing her assets. Thus, Mrs. Hansen's last will was revoked as to Lyle Hansen by their subsequent marriage, RCW 11.12.050, and Lyle Hansen was entitled to judgment for his intestate share of the estate in the amount of one-half of her separate estate. RCW 11.04.015.

Also at issue in distributing the estate's assets was the status of certain real estate in Airway Heights purchased for $30,000 on October 17, 1979, by Lyle and Georgia Hansen, as husband and wife, and Maynard and Linda Moe, as husband and wife. Georgia Hansen paid $8,700 in cash from her separate funds as a down payment on the property. The court held the undivided one-half interest of Lyle and Georgia Hansen in the Airway Heights real estate was their community property, subject to an $8,700 lien in favor of the estate, chargeable one-half against the interest of Lyle Hansen and one-half against the interest of Maynard and Linda Moe. Mr. Moe appeals.

First, did the court err in concluding Mrs. Hansen's will was revoked as to Lyle Hansen and that the prenuptial agreement was not a marriage settlement pursuant to RCW 11.12.050? RCW 11.12.050 reads:

If, after making any will, the testator shall marry and the spouse shall be living at the time of the death of the testator, such will *shall be deemed revoked as to such spouse, unless provision shall have been made for such survivor by marriage settlement,* or unless such survivor be provided for in the will or in such way mentioned therein as to show an intention not to make such provision, and no other evidence to rebut the presumption of revocation shall be received.

(Italics ours.)

In general, the law disfavors revocation of wills. *See, e.g., In re Estate of Hall,* 159 Wash. 236, 242, 292 P. 401 (1930); *In re Estate of Adler,* 52 Wash. 539, 549, 100 P. 1019, 100 P. 1135 (1909). Observing this policy, the Legislature provided in RCW 11.12.050 that the court may consider the existence and terms of a marriage settlement agreement to rebut the presumption of revocation as to the surviving spouse. *In re Estate of Geer,* 29 Wn. App. 822, 827, 629 P.2d 458, *review denied,* 96 Wn.2d 1004 (1981). A marriage settlement need not make *beneficial* provision for a surviving spouse in order to prevent revocation of an antenuptial will. *In re Estate of Burmeister,* 124 Wn.2d 282, 287, 877 P.2d 195 (1994).

██ *Burmeister* does not address whether a prenuptial agreement offered as a marriage settlement pursuant to RCW 11.12.050 will prevent revocation of the will *if it is obtained without full disclosure of the decedent's separate assets.* The courts enforce prenuptial agreements only if the parties have fully disclosed the amount, character and value of the property involved. *In re Marriage of Matson,* 107 Wn.2d 479, 483, 730 P.2d 668 (1986) (quoting *Whitney v. Seattle-First Nat'l Bank,* 90 Wn.2d 105, 110, 579 P.2d 937 (1978)). Here, the trial court concluded the Hansens' prenuptial agreement was invalid for lack of full disclosure and therefore did not rebut the presumption of revocation of a will under RCW 11.12.050. This conclusion is supported by *In re Estate of McKiddy,* 47 Wn. App. 774, 778, 737 P.2d 317 (1987), which held a void agreement does not constitute a marriage settlement.

Nevertheless, Mr. Moe argues language in *Burmeister* supports a holding the invalid agreement satisfies the antirevocation provisions in the statute because it clearly establishes

the parties' intent to relinquish any claim each had to the other's separate property, by inheritance or otherwise. Specifically, *Burmeister* observed at page 287 that "the sole purpose of RCW 11.12.050 [is] to guard against *unintentional* disinheritance of a surviving spouse" (citing *In re Estate of Steele*, 45 Wn.2d 58, 61, 273 P.2d 235 (1954)). The quoted language does not help Mr. Moe. One, we cannot say Mr. Hansen shared the intent to waive inheritance in these circumstances wherein Mrs. Hansen obtained his agreement without full disclosure of her assets. Two, public policy militates against giving effect to an agreement made in breach of fiduciary duties. *See Guenther v. Fariss*, 66 Wn. App. 691, 697, 833 P.2d 417 (1992), *review denied*, 120 Wn.2d 1028 (1993).

■ In the alternative, Mr. Moe challenges the trial court's finding the prenuptial agreement was made without full disclosure. He argues there was disclosure based upon Mr. Hansen's admission he knew his future wife owned her own home and had inherited an oil supply business. The Supreme Court has held that something less than providing the spouse a written list of assets may be acceptable. *Matson*, at 484-85 (citing *In re Marriage of Knoll*, 65 Or. App. 484, 671 P.2d 718 (1983) (wife understood her husband's assets because she handled the bookkeeping and payroll for her husband's businesses)). But here, Mr. Hansen not only did not know the extent of his wife's holdings, he did not know their value. The evidence supports the court's conclusion Mrs. Hansen breached her duty to disclose.

We therefore affirm the trial court's holding Mrs. Hansen's will was revoked by operation of law as to Mr. Hansen.

■ Second, did the court err in refusing to apply the doctrine of equitable estoppel to defeat revocation of the will? Equitable estoppel requires an admission, statement, or act inconsistent with the claim afterward asserted. Mr. Moe argues Mr. Hansen's signature on the prenuptial agreement estops him from now claiming an intestate share of his late wife's separate property. Mr. Moe's argument in support of estoppel fails for the same reason his argument under the first issue failed. Because Georgia Hansen did not inform Mr. Hansen of the full extent of her assets when he signed

the prenuptial agreement, his signature thereon is of no effect and cannot be used to establish an estoppel. *See McKiddy*, at 781; *In re Marriage of Foran*, 67 Wn. App. 242, 249, 834 P.2d 1081 (1992).

 ██ Third, did the court err in characterizing the Airway Heights realty as community property? The characterization of property as community or separate is determined at the date of acquisition. *In re Marriage of Shannon*, 55 Wn. App. 137, 140, 777 P.2d 8 (1989). Property acquired during marriage is presumed to be community property. *In re Estate of Smith*, 73 Wn.2d 629, 631, 440 P.2d 179 (1968); *In re Marriage of Hurd*, 69 Wn. App. 38, 51, 848 P.2d 185, *review denied*, 122 Wn.2d 1020 (1993). Clear, cogent, and convincing evidence is required to rebut the presumption of community property. *Smith*, at 631; *In re Marriage of Olivares*, 69 Wn. App. 324, 336, 848 P.2d 1281, *review denied*, 122 Wn.2d 1009 (1993).

 Mr. Moe contends Mrs. Hansen's records clearly indicate she made the down payment and all subsequent payments on the property from her separate funds and intended to hold it as separate property. Mr. Hansen testified the property was acquired by the two marital communities and all four purchasers agreed that when the property was sold, Mrs. Hansen would be reimbursed for the $8,700 down payment made from her separate funds. He also stated he operated a used car business on the property and made cash reimbursements, albeit irregular ones, to his wife, who then paid the real estate contract out of her separate account. The trial court found his testimony credible; that determination will not be disturbed on appeal. *Davis v. Department of Labor & Indus.*, 94 Wn.2d 119, 124, 615 P.2d 1279 (1980).

Based upon the foregoing, the court correctly deemed the Airway Heights realty to be community property.

Affirmed.

SWEENEY and SCHULTHEIS, JJ., concur.

Review granted at 127 Wn.2d 1021 (1995).