[No. 63146-8. En Banc. February 22, 1996.]

*In the Matter of the Estate of* GEORGIA MOE HANSEN.

ORVILLE L. MOE, *as Personal Representative, Petitioner*, v. LYLE K. HANSEN, *Respondent.*

*Law Offices of Robert E. Kovacevich, P.S.*, by *Robert E. Kovacevich*, for petitioner.

*John H. McRae*, for respondent.

DOLLIVER, J. — Orville L. Moe, as personal representative of the estate of Georgia Moe Hansen, petitions this court to reverse the Court of Appeals decision, *In re Estate of Hansen*, 77 Wn. App. 526, 892 P.2d 764 (1995), which revoked the will of Georgia Moe Hansen as to her surviving spouse, Lyle K. Hansen, under former RCW 11.12.050.

Georgia Moe Hansen (Georgia) married Lyle K. Hansen (Lyle) on October 14, 1975. Both spouses had been married previously and each had children from the prior marriage. Georgia and Lyle knew each other for approximately one and one-half years, and they resided together in Georgia's house for a few months before their marriage. On September 24, 1975, Georgia and Lyle signed a prenuptial agreement. The controlling language in the agreement provides:

> WHEREAS, a marriage is contemplated bewween [sic] the parties and they are desirous of settling their property rights as they exist at this time in view of the fact that each party has had a prior marriage and has obligations to their children as a result of such marriages; now, therefore, in consideration of the contemplated marriage and the obligations to their children as the result of such prior marriage,
>
> IT IS MUTUALLY AGREED:
>
> 1. Each party to this agreement relinquishes and waives any claim which each may now have or hereafter acquire against the separate property of the other.

Ex. R-1.

Georgia died on May 13, 1991. Her will, which she had executed in January 1974, left the entire estate to her three children from her first marriage. During the marriage, Georgia and Lyle had maintained separate properties and bank accounts, and there was little or no community property in existence at the time of Georgia's death, other than five lots in Airway Heights, Spokane County, Washington. *Hansen*, 77 Wn. App. at 531.

The sole issue in this case is whether Georgia intended to disinherit Lyle by failing to provide for him in her will. Under former RCW 11.12.050, when a surviving spouse is not provided for or mentioned in the testator's prenuptial will or provided for by marriage settlement, the law presumes the disinheritance of the surviving spouse was unintentional. In those circumstances, the will is revoked as to the surviving spouse, who is then allowed to take an intestate share of the testator's estate under RCW

11.04.015. A marriage settlement exists in this case, but Lyle claims the prenuptial agreement is invalid and inapplicable for purposes of former RCW 11.12.050.

The trial court and the Court of Appeals agreed with Lyle's argument. Following *In re Estate of McKiddy*, 47 Wn. App. 774, 737 P.2d 317 (1987) (holding that an invalid prenuptial agreement was not a "marriage settlement" for purposes of RCW 11.12.050), the Court of Appeals revoked Georgia's will as to Lyle. *Hansen*, 77 Wn. App. at 530. Orville L. Moe, one of Georgia's sons from her first marriage and the personal representative of Georgia's estate, petitioned this court to review the Court of Appeals decision. We reverse.

 Former RCW 11.12.050 (repealed by Laws of 1994, ch. 221, § 72, p. 1179, effective Jan. 1, 1995) provides:

> If, after making any will, the testator shall marry and the spouse shall be living at the time of the death of the testator, such will shall be deemed revoked as to such spouse, unless provision shall have been made for such survivor by marriage settlement, or unless such survivor be provided for in the will or in such way mentioned therein as to show an intention not to make such provision, and no other evidence to rebut the presumption of revocation shall be received. . . .

This statute was repealed and replaced by RCW 11.12.095, effective January 1, 1995. The new statute allows a court to consider any "clear and convincing evidence" of the testator's intent when determining whether or not it should revoke the testator's will as to the surviving spouse. RCW 11.12.095(3). This court recently construed former RCW 11.12.050 in light of the new statute. *In re Estate of Burmeister*, 124 Wn.2d 282, 877 P.2d 195 (1994). We emphasized "the sole purpose of RCW 11.12.050 [is] to guard against *unintentional* disinheritance of a surviving spouse." *Burmeister*, 124 Wn.2d at 287. In order to determine whether a marriage settlement saves a will as to a surviving spouse under RCW 11.12.050, a court must ask if the agreement indicates "a clear written intention

. . . to disinherit a surviving spouse." *Burmeister*, 124 Wn.2d at 287.

The Court of Appeals failed to follow *Burmeister* when it revoked Georgia's will as to Lyle. The Court of Appeals found Lyle and Georgia's prenuptial agreement to be invalid and held that an invalid agreement was not a "marriage settlement" for purposes of RCW 11.12.050. *Hansen*, 77 Wn. App. at 529-30. In so ruling, the court relied on *In re Estate of McKiddy*, 47 Wn. App. 774, 737 P.2d 317 (1987), which specifically held an invalid marriage settlement could not prevent revocation of a will under RCW 11.12.050 as to a surviving spouse.

*McKiddy* is inconsistent with *Burmeister*. *McKiddy* involved a situation where a surviving spouse claimed her husband's prenuptial will was revoked as to her, despite the presence of a prenuptial agreement. The surviving wife claimed the prenuptial agreement was void at its inception; therefore, the agreement could not save the husband's will as to her under RCW 11.12.050.

The Court of Appeals agreed with Florence McKiddy. The court held only valid marriage settlements could operate to save a will under RCW 11.12.050. To support its holding, *McKiddy* first relied on *In re Estate of Nelson*, 85 Wn.2d 602, 612-13, 537 P.2d 765 (1975), which discussed and affirmed the validity of a marriage settlement before finding that the settlement effectively rebutted the presumption of revocation of a will under RCW 11.12.050. *McKiddy*, 47 Wn. App. at 778. *McKiddy* was correct in stating that *Nelson* "implicitly accepted the position that only valid marriage settlement agreements are relevant" to RCW 11.12.050. *McKiddy*, 47 Wn. App. at 778. However, *Nelson* did not directly rule on the specific issue, thus the implication is dicta and not controlling.

After discussing *Nelson*, *McKiddy* concluded that a court, under RCW 11.12.050, could not consider an *invalid* prenuptial agreement as evidence of the testator's intent. "[E]ven with the most compelling evidence of a contrary intention, in the absence of a valid marriage settlement,

the will is revoked as to Florence." *McKiddy*, 47 Wn. App. at 779.

No language within former RCW 11.12.050 requires a marriage settlement to be enforceable before a court can look to the agreement for the testator's intent. *McKiddy*'s reading of the statute was improper. "The court will not read into a statute matters which are not there nor modify a statute by construction." *King County v. City of Seattle*, 70 Wn.2d 988, 991, 425 P.2d 887 (1967). *See also Progressive Animal Welfare Soc'y v. University of Wash.*, 114 Wn.2d 677, 688, 790 P.2d 604 (1990). As *Burmeister* strongly emphasizes, when looking into a marriage settlement to determine whether a will is revoked as to a surviving spouse under RCW 11.12.050, the court's only concern is whether the agreement indicates "a clear written intention . . . to disinherit a surviving spouse." *Burmeister*, 124 Wn.2d at 287. Determining the testator's intent from a marriage settlement involves an inquiry distinct and separate from the question of whether a court will enforce the terms of the agreement.

It is clear from the prenuptial agreement in this case that Georgia intended all of her separate property to go to her children from her first marriage. Georgia was the spouse who suggested she and Lyle enter into a prenuptial agreement. She obtained the agreement from her attorney. Lyle does not claim that Georgia misunderstood the nature of the agreement. Indeed, the particular prenuptial agreement in this case is exceedingly simple: it merely stated that, because Georgia and Lyle wanted their separate property to go to their children from prior marriage, they waived all claims against each other's separate property. This agreement demonstrates Georgia did not unintentionally disinherit Lyle — she wanted all of her property to go to her children, *despite* her marriage with Lyle.

The validity of a marriage settlement is irrelevant for purposes of former RCW 11.12.050. A court may allow an unenforceable marriage settlement to save a will as to a

surviving spouse under RCW 11.12.050, but this does not mean the court is bound to enforce the terms of the agreement. After looking to a prenuptial agreement to determine the testator's intent, a court is free to find the agreement nonbinding against the surviving spouse under the test set forth in *In re Matson*, 107 Wn.2d 479, 730 P.2d 668 (1986).

A hypothetical extension of the scenario in *Matson* demonstrates the difference between looking to a marriage settlement for the testator's intent and determining whether or not to actually enforce terms of the agreement. The prenuptial agreement in *Matson* characterized the husband's property as separate, even if the value of the property was attributable to the husband's community labor invested during the marriage. *See Matson*, 107 Wn.2d at 486. *Matson* applied a two-prong test and found the agreement was invalid because it was unfair and the wife did not freely and voluntarily waive her rights to her husband's community labor. *Matson*, 107 Wn.2d at 487. If the husband had died, leaving a prenuptial will that failed to provide for his wife, then former RCW 11.12.050 would be applied and the prenuptial agreement would be considered by the court. If the prenuptial agreement demonstrated the husband's intent to disinherit his wife, the court could allow the agreement to save the will as to the surviving spouse. However, the court could still refuse to follow the agreement's characterization of separate and community property when distributing the assets involved in the probate of the will.

We need not rule on the validity of Georgia and Lyle's prenuptial agreement in order to apply former RCW 11.12.050. Since the prenuptial agreement in this case demonstrates Georgia's intent to disinherit Lyle, we hold Georgia's will is not revoked as to Lyle Hansen.

The Court of Appeals is reversed, and *In re Estate of McKiddy*, 47 Wn. App. 774, 737 P.2d 317 (1987) is overturned insofar as it is inconsistent with this opinion.

Durham, C.J., and Smith, Johnson, Madsen, Alexander, Talmadge, and Sanders, JJ., concur.