**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**


The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JUN 29 2017
Fairhurst, CJ.
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on June 29, 2017

Susan L. Carlson
SUSAN L. CARLSON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ESMERALDA RODRIGUEZ, | ) | No. 93645-5 |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| LUIS DANIEL ZAVALA, | ) | |
| | ) | |
| Respondent. | ) | Filed JUN 29 2017 |

GONZÁLEZ, J.—As a community, we have recognized the importance of domestic violence as an offense against our ordered society and we have committed to providing victims the maximum protection from abuse which the law and those who enforce the law can provide. RCW 10.99.010. A victim of abuse may seek this protection by filing a domestic violence protection order. RCW 26.50.020(1); *see generally* LAWS OF 1992, ch. 111. Esmeralda Rodriguez petitioned for protection on behalf of her two-year-old son, arguing that Luis Zavala's repeated threats against her son constitute "domestic violence" under the plain language of RCW 26.50.010(3) and that she may petition for a protection order on her son's behalf based on her reasonable fear for him. We agree and reverse.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Rodriguez v. Zavala*, No. 93645-5

## BACKGROUND

In addition to an infant child, L.Z.,[1] Esmeralda Rodriguez and Luis Zavala shared a history of domestic violence. Over the course of their relationship, Zavala repeatedly physically and emotionally assaulted Rodriguez. He shoved Rodriguez to the ground while she was pregnant with L.Z., attempted to smother her with a pillow, blamed her for his failings in life, pulled a knife on her and promised to cut her into tiny pieces, threatened to kidnap L.Z., and said he would do something so horrible to Rodriguez's daughters from a prior relationship that she would want to kill herself. He threatened to kill her, her children, and himself.

Zavala tried to control Rodriguez. He restricted her communication with friends and family members, and he appeared uninvited wherever she was when she failed to return his phone calls.

Zavala's history of violence against Rodriguez reached its peak one day in June 2015 after the couple had separated. At 2:00 a.m. that morning and in violation of a previous restraining order, Zavala pounded on Rodriguez's door, threatening to break windows unless she let him in. Rodriguez went to the door and opened it enough to tell Zavala to leave. Taking advantage of the opening, Zavala pushed past Rodriguez, cornered her, and began choking her. He told Rodriguez he was going to "end what [he] started." Clerk's Papers at 5.

---

[1] We will use the initials L.Z. throughout to refer to Rodriguez and Zavala's minor child.

2

*Rodriguez v. Zavala*, No. 93645-5

Rodriguez feared Zavala would make good on his past threats and kill her, her daughters, their son, and then kill himself. After Zavala's hands wrapped around her neck, Rodriguez reached out, grasped a kitchen knife, and stabbed Zavala and screamed to her daughter to call for help. The police arrived and arrested Zavala.

A few days later, Rodriguez petitioned ex parte for a domestic violence protection order for herself and her children, including L.Z. In her petition, Rodriguez described the assault that compelled her to seek the order, as well as Zavala's history of violence. The court issued a temporary order pending a full hearing. The temporary order restrained Zavala from contacting Rodriguez and all four children.

At the later protection order hearing, Zavala appeared. Rodriguez recounted the choking incident and told the court that L.Z. had been asleep in another room during the most recent attack. She feared Zavala would take their son based on previous threats. Zavala admitted to coming to the house because he wanted to see L.Z. but denied Rodriguez's allegations of abuse. The trial court issued a protective order for Rodriguez and her daughters, but excluded L.Z., explaining that the boy was not "present" during the assault or threatened at all. Report of Proceedings at 10-11. According to the trial judge, "[L.Z.] wasn't involved in any of this." *Id.* at 12. The order was effective for one year, expiring on June 26, 2016.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Rodriguez appealed. Among other things, she argued that her son should have been included in the final protection order based on her fear that Zavala would hurt L.Z. *Rodriguez v. Zavala*, No. 33649-2-III, slip op. at 7-8 (Wash. Ct. App. Aug. 18, 2016) (unpublished), https://www.courts.wa.gov/opinions/pdf/336492_unp.pdf. The Court of Appeals affirmed, finding that a petitioner may seek relief based only on her fear of imminent harm to herself. *Id*. at 9. We granted review and now reverse. *Rodriguez v. Zavala*, 187 Wn.2d 1001, 386 P.3d 1092 (2017).

ANALYSIS

1. DEFINITION OF "DOMESTIC VIOLENCE"

Rodriguez contends that the trial court erred when it did not include L.Z. in the domestic violence protection order. She asserts that the plain meaning of "domestic violence" in RCW 26.50.010(3) allows her to seek a protection order based on her fear for L.Z. We agree.

a. STANDARDS OF REVIEW

Whether to grant or deny a domestic violence protection order is generally reviewed for abuse of discretion. *Hecker v. Cortinas*, 110 Wn. App. 865, 869, 43 P.3d 50 (2002) (citing *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). However, a key question in this case is whether the definition of "domestic violence" in chapter 26.50 RCW contemplates a parent's fear of harm

4

*Rodriguez v. Zavala*, No. 93645-5

for a child at the hands of another parent. To answer this question we must interpret the definition of "domestic violence" in RCW 26.50.010(3). We review questions of statutory interpretation de novo to give effect to the legislature's intentions. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002).

When possible, we derive legislative intent solely from the plain language enacted by the legislature, considering the text of the provision itself, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole. *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010); *Campbell & Gwinn*, 146 Wn.2d at 9-10. Plain language that is not ambiguous does not require construction. *State v. Delgado*, 148 Wn.2d 723, 727, 63 P.3d 792 (2003) (quoting *State v. Wilson*, 125 Wn.2d 212, 217, 883 P.2d 320 (1994)).

b. STATUTORY DEFINITION OF "DOMESTIC VIOLENCE"

To commence a domestic violence protection order action, a person must file a petition "alleging that the person has been the victim of domestic violence committed by the respondent." RCW 26.50.020(1)(a). "Domestic violence" is defined as

> (a) physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, *between family or household members*; (b) sexual assault of one family or household member by another;

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

or (c) stalking as defined in RCW 9A.46.110 of one family or household member by another family or household member.

RCW 26.50.010(3) (emphasis added).

When read together, the relevant provisions explain that any person may petition for protection by alleging that the person has been the victim of "domestic violence"—that is, the infliction of fear of imminent physical harm between family members. RCW 26.50.020(1)(a), .010(3)(a). The Court of Appeals construed "this language to be the fear possessed by the one seeking protection, not fear that another family member has of harm to the one for whom protection is sought." *Rodriguez*, No. 33649-2-III, slip op. at 9.

The Court of Appeals's interpretation is unnecessarily narrow. By relating the fear of harm back to the petitioner, it ignores the final prepositional phrase "between family or household members."[2] RCW 26.50.010(3)(a). This phrase demonstrates that the definition of "domestic violence" is not as limited as the Court of Appeals concluded. It is true that a petitioner must allege he or she is a victim of domestic violence and that "domestic violence" is the fear of imminent physical harm between family members. But the definition does not state that this

---

[2] Under the comma corollary to the last antecedent rule, the phrase "between family members" modifies "physical harm, bodily injury, assault, or the infliction of fear thereof." *See City of Spokane v. Spokane County*, 158 Wn.2d 661, 673, 146 P.3d 893 (2006) (the presence of a comma before the qualifying phrase is evidence that the qualifier is intended to apply to all antecedents).

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

fear must be between a petitioner and a perpetrator. Indeed, the statute's definition lists fear between family or household members without restriction. Because domestic violence includes the infliction of fear of harm *between family members* generally, the definition includes a mother's fear of harm to her child by that child's father. The language of the definition is plain and unambiguous.

The context of the statute, related provisions, and statutory scheme as a whole also indicate that "domestic violence" in RCW 26.50.010(3) was intended to cover more than merely a petitioner and a perpetrator.[3] A person may seek a protection order "on behalf of a minor family or household members" under RCW 26.50.020(1)(a). RCW 26.50.010(6) defines "family or household members" broadly to include an individual's current and former spouses and domestic partners, individuals with a child in common regardless of marital status, adult persons related by blood or marriage, adult persons presently or previously residing together, dating relationships, and those with biological or legal parent-child relationships (including stepparents and stepchildren and grandparents and grandchildren). This definition reflects the legislative recognition that violence in the home encompasses many different familial and household roles; violence does not distinguish on the basis of relationship.

---

[3] Indeed, the court included in the protection order Rodriguez's daughter who called the police and Rodriguez's two other daughters, who were not directly involved in the assault.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Moreover, a person does not have to be a victim of domestic violence to be included in a protection order. RCW 26.50.060 affords trial courts substantial discretion to protect victims and their loved ones. The provision explains that a trial court may bar a respondent from going to the "day care or school of a child" or having "any contact with the victim of domestic violence or the victim's children or members of the victim's household" and that, notably, the court may order "other relief as it deems necessary for the protection of the petitioner and other family or household members sought to be protected." RCW 26.50.060(1)(b), (h), (f). If the Court of Appeals's reading of "domestic violence" is correct and an individual must personally appreciate the threat of violence to be included in a protection order, it makes little sense for the legislature to enact .060(1)(b), (h), and (f), provisions that specifically protect those who are not victims and were not present when the violence or threat of violence occurred. The Court of Appeals's interpretation would render these sections meaningless. *Cf. Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996) (statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous).

The legislative intent of the Domestic Violence Prevention Act (DVPA) (ch. 26.50 RCW) further supports that "domestic violence" includes a petitioner's fear of harm between family members. Washington lawmakers expressly found that

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

"[d]omestic violence is a problem of immense proportions affecting individuals as well as communities." LAWS OF 1992, ch. 111, § 1. "Domestic violence must be addressed more widely and more effectively in our state: Greater knowledge by professionals who deal frequently with domestic violence is essential . . . to reduce and prevent domestic violence by intervening before the violence becomes severe" and "to encourage domestic violence victims to end abuse, leave their abusers, [and] protect their children." *Id.*; *Danny v. Laidlaw Transit Servs., Inc.*, 165 Wn.2d 200, 213, 193 P.3d 128 (2008). These goals are thwarted by excluding a threatened child from a protection order because that child may not have known of the threat or was too young to speak. In this case, Zavala assaulted Rodriguez when she was pregnant with L.Z., and also threatened to kidnap and kill the child. In light of the legislature's findings, Rodriguez's petition presented the statutorily appropriate time to intervene—before Zavala's violent threats against L.Z. escalated to more violent acts.

The plain language of RCW 26.50.010(3), related statutes, and statutory scheme demonstrate that the definition of "domestic violence" allows a petitioner to seek relief based on a general fear of harm between family members. To conclude that "domestic violence" means the fear possessed only by the one seeking protection not only conflicts with the statute's plain language, it would leave unprotected a vulnerable population: threatened children. Even more

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Rodriguez v. Zavala*, No. 93645-5

acutely, such an interpretation would fail to protect infants and developmentally delayed children. These are the most vulnerable of our vulnerable populations. Excluding these children from protection orders because they fail to or cannot show fear of a harm they may not understand subjects them to violence the legislature expressly intended to prevent.

Therefore, Rodriguez's fear that Zavala would harm L.Z. constitutes domestic violence under RCW 26.50.010(3) and the child should have been included in the protection order. Accordingly, we reverse the Courts of Appeals and the trial court's ruling.

## 2. HARM AND EXPOSURE TO DOMESTIC VIOLENCE

Rodriguez also contends that exposure to domestic violence is harmful and itself constitutes domestic violence under the DVPA. Rodriguez and amicus submitted multiple psychological studies supporting her contention to this court and to the Court of Appeals. *See* Pet. for Review at 15-18; App.'s Opening Br. at 8-13; Br. of Amicus Curiae Child Justice, Inc. at 8-15.[4]

---

[4] In its amicus curiae brief, the American Civil Liberties Union of Washington (ACLU) characterized Rodriguez's argument as asking this court to mandate that a child exposed to domestic violence be "automatically included as a person with whom contact is prohibited under a domestic violence protection order ('DVPO')" and "if the person against whom the DVPO is issued is the child's other parent, the DVPO should deny all contact with the child." Br. of Amicus Curiae ACLU at 1-2. The ACLU warns against this approach because it would circumvent parenting plans and infringe on a parent's fundamental right to raise his or her child. The warning would be well taken if this were a fair characterization of Rodriguez's argument. But Rodriguez has never argued for a "blanket rule that contact between an abuser and his or her children be automatically prohibited when a child has been exposed to domestic violence."

10

The Court of Appeals declined to reach the issue, concluding that Rodriguez was raising a new argument because she had not presented the studies to the trial court or filed a RAP 9.11(a) motion for new evidence on review. *Rodriguez*, No. 33649-2-III, slip op. at 9 (citing *In re Det. of Ambers*, 160 Wn.2d 543, 557 n.6, 158 P.3d 1144 (2007); RAP 9.11(a); *State v. Ziegler*, 114 Wn.2d 533, 541, 789 P.2d 79 (1990)). As Rodriguez notes, she alleged L.Z. was in her home when she was attacked by Zavala and she "requested that the [trial c]ourt determine whether these facts met the definition of domestic violence. Argument on appeal that exposure to domestic violence is harmful to children and constitutes domestic violence, as defined under the DVPA, was just that; argument, not a new issue." Pet. for Review at 14-15. Considering that she was pro se, as many petitioners are, the argument was well presented. Whether a child's presence in a violent home

---

App's Answer to Amicus Curiae ACLU at 2-3. Indeed, the decision to include a child in a protection order prohibiting a parent from committing acts of domestic violence against the child is discretionary and based on the trial court's determination of necessity. *Id.* at 5 (citing RCW 26.50.060(1)). Further, provisions in domestic violence protection orders are subject to parenting plans. *See In re Marriage of Barone*, 100 Wn. App. 241, 247, 996 P.2d 654 (2000) (protection orders may not function as de facto modifications of permanent parenting plans and child support decrees). The ACLU also asks us to reaffirm that there must be a finding of "reasonable fear of future harm based on the actual facts of the case" in order to restrict a parent's fundamental liberty interest in contacting his or her child. Br. of Amicus Curiae ACLU at 4. As Rodriguez states, this standard conflicts with the plain language of the DVPA. RCW 26.50.030 requires a petitioner to allege that domestic violence exists and that the petitioner was the victim of domestic violence by the respondent. Where a protection order restrains an individual from contacting his or her minor children, the restraint must be for a fixed period not to exceed one year, renewable after another hearing and subject to a dissolution or parenting plan action under chapter 26.09 or 26.26 RCW. RCW 26.50.060(2). No showing of "actual risk of future harm" is required. RCW 26.50.060(2); *see also Aiken v. Aiken*, 187 Wn.2d 491, 498, 501, 387 P.3d 680 (2017) (discussing chapter 26.50 RCW procedural protections).

11

meets the definition of "domestic violence" relates to the question of whether the exposure to said violence is harmful under the DVPA, so we will address it here. RAP 2.5 (reviewing courts possess discretion to decide whether an argument was sufficiently raised at trial); *see also In re Estate of McKiddy*, 47 Wn. App. 774, 779-80, 737 P.2d 317 (1987) (the appellate court considered an issue that "arguably related" to issues raised in the trial court), *overruled on other grounds by In re Estate of Hansen*, 128 Wn.2d 605, 910 P.2d 1281 (1996).

We hold that exposure to domestic violence is harmful under the DVPA. The harm caused by domestic violence can be physical or psychological. As discussed above, RCW 26.50.010(3) defines "domestic violence" as "[p]hysical harm . . . or the infliction of fear of imminent physical harm, bodily injury or assault." At least one Washington court has held a child's fear for a parent brought about by witnessing one parent assault the other is a psychological harm that qualifies as domestic violence and is a statutory basis for a protection order. *In re Marriage of Stewart*, 133 Wn. App. 545, 551, 137 P.3d 25 (2006). According to *Stewart*, a child is psychologically harmed or placed in fear by observing violence against a family member.

Scholarly research supports the conclusion that exposure to domestic violence is a simpler, more insidious method of inflicting harm. While exposure to abuse may not leave visible scars, the secondary physical and psychological effects

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Rodriguez v. Zavala*, No. 93645-5

of exposure are well documented. *See, e.g., Danny*, 165 Wn.2d at 212-13 ("[t]he legislature has specifically recognized that children 'are deeply affected by the violence' in their homes" (quoting LAWS OF 1991, ch. 301, § 1)); DAVID FINKELHOR ET AL., U.S. DEP'T OF JUSTICE, JUVENILE JUSTICE BULLETIN: CHILDREN'S EXPOSURE TO VIOLENCE, CRIME, AND ABUSE: AN UPDATE 2-3 (Sept. 2015) (discussing national survey examining childhood exposure to domestic violence), http://www.ojjdp.gov/pubs/248547.pdf [https://perma.cc/X8J6-TNSG]; ALICIA SUMMERS, NAT'L COUNCIL OF JUVENILE & FAMILY COURT JUDGES PERMANENCY PLANNING FOR CHILDREN DEP'T, CHILDREN'S EXPOSURE TO DOMESTIC VIOLENCE: A GUIDE TO RESEARCH AND RESOURCES 8 (2006) (exploring the detrimental consequences of domestic violence exposure on the "unseen victims"—children), http://www.ncjfcj.org/sites/default/files/Childrens%20Exposure%20to%20Violence.pdf [https://perma.cc/DU7A-QR4G]; H. LEIN BRAGG, U.S. DEP'T OF HEALTH & HUMAN SERVS., CHILD PROTECTION IN FAMILIES EXPERIENCING DOMESTIC VIOLENCE 9-12 (2003), https://www.childwelfare.gov/pubPDFs/domesticviolence.pdf [https://perma.cc/9KHA-9XFB].

In addition to witnessing violence, hearing and seeing its effects on loved ones may harm a child's brain development and lead to learning disabilities, put

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Rodriguez v. Zavala*, No. 93645-5

children under emotional stress, and contribute to an increase in anxiety, sleep disorders, and posttraumatic stress disorder. Pet. for Review at 15-16 (citing multiple scientific studies in support); *see also State v. Janes*, 121 Wn.2d 220, 223-28, 850 P.2d 495 (1993) (17-year-old murdered his stepfather after years of direct and indirect exposure to domestic violence); *Nicholson v. Williams*, 203 F. Supp.2d 153, 197-98 (E.D.N.Y. 2002) (noting studies on the emotional and physical ramifications for children exposed to domestic violence), *vacated in part on other grounds by Nicholson v. Scoppetta*, 116 F. App'x 313, 316 (2d Cir. 2004) (unpublished). More importantly, our legislature has recognized that domestic violence is "at the core of other major social problems: Child abuse, other crimes of violence against person or property, juvenile delinquency, and alcohol and drug abuse." LAWS OF 1992, ch. 111, § 1.

Ample evidence supports the view that direct and indirect exposure to domestic violence is harmful. Here, L.Z. was in the house while his father choked his screaming mother at 2:00 a.m. in violation of a no contact order. It may well be that the infant heard these violent acts. It strains common sense to think that L.Z. was not somehow exposed to domestic violence given the facts of this case. Therefore, we hold that such exposure constitutes domestic violence under chapter 26.50 RCW and L.Z. was a victim of that abuse.

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

### 3. THE TRIAL COURT ABUSED ITS DISCRETION

The trial court abused its discretion in finding that L.Z. was not involved in domestic violence where Zavala was threatening the entire family. An abuse of discretion is found when a judge's decision is exercised on untenable grounds or for untenable reasons. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). A decision is based untenable reasons if it is based on an incorrect standard. *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997) (citing *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995)). The court possessed clear authority to issue a protection order under these facts, regardless of the existence or absence of a parenting plan. As discussed above, the trial court applied the wrong legal standard in reviewing the definition of "domestic violence" and abused its discretion.

### CONCLUSION

Zavala's violent threats against L.Z. are "domestic violence" under the plain language of RCW 26.50.010(3), and Rodriguez properly petitioned for a protection order on L.Z.'s behalf based on her reasonable fear for him. Accordingly, we reverse the Court of Appeals. We also conclude that exposure to domestic violence constitutes harm under the DVPA and qualifies as domestic violence under chapter 26.50 RCW. Because the trial court failed to consider the harm to L.Z. based on an incorrect reading of .010(3), it abused its discretion.

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Rodriguez v. Zavala*, No. 93645-5

González, J.

WE CONCUR:

Fairhurst, C.J.

Madsen, J.

Johnson, J.

Wiggins, J.

Stephens, J.

Gordon McCloud, J.

Owens, J.

Yu, J.

16