[No. 62708-8.    En Banc.    December 7, 1995.]

*In the Matter of the Estate of* RICHARD JOSEPH
DEONESEUS.

JEAN DEONESEUS GIER, *Petitioner*, v. C. JOANNE
DEONESEUS, *Respondent*.

*Pibel & Marston,* by *E. Douglas Pibel, Jr.,* for petitioner.
*Riach, Gese, Seather & Watts,* by *Vernon J. Seather* and
*Michael P. Jacobs,* for respondent.

GUY, J. — On January 17, 1991, Richard Joseph Deoneseus, a widower (hereafter testator), executed a will leaving his entire estate to his adult daughter, Jean Deoneseus Gier (hereafter daughter), and also named his daughter as the "executor." He named Jo Anne Thompson (later Deoneseus) as the alternate "executor" in the event his daughter declined, failed or was unable to act as the executor. The will makes no other mention of Ms. Thompson. On June 1, 1991, the testator married Jo Anne Thompson (hereafter wife). On August 15, 1991, the testator died without signing a new will.

The daughter sought to probate the will and the wife moved for an order of summary judgment, arguing that the will was revoked as to her, as the surviving spouse, under former RCW 11.12.050. The trial court granted summary judgment in favor of the wife, finding that the will was revoked as to the surviving spouse under former RCW 11.12.050. The wife therefore took her intestate share. The daughter appealed.

The Court of Appeals affirmed the trial court's decision, agreeing that the will was revoked as to the testator's spouse because there was no intention shown in the prenuptial will to disinherit the surviving spouse. *In re Estate of Deoneseus*, 76 Wn. App. 656, 886 P.2d 1155, *review granted*, 126 Wn.2d 1022 (1995). The daughter seeks review of the revocation issue. We affirm.

## ISSUE

We are asked whether the naming of a future spouse in a will as an alternate executor shows the testator's intent not to provide for the spouse and thereby rebuts the statutory presumption that a will made before marriage is revoked by operation of law as to the surviving spouse.

## ANALYSIS

The legal effect that a testator's marriage has on a prenuptial will is controlled in this case by former RCW 11.12.050,[1] which provided in relevant part:

> If, after making any will, the testator shall marry and the spouse shall be living at the time of the death of the testator, such will shall be deemed revoked as to such spouse, unless provision shall have been made for such survivor by marriage settlement, or unless such survivor be provided for in the will or in such way mentioned therein as to show an intention not to make such provision, and no other evidence to rebut the presumption of revocation shall be received.

■ The purpose of this statute was to prevent the unintentional disinheritance of the surviving spouse of a testator who marries after making a will and then dies without ever changing it. *In re Estate of Burmeister*, 124 Wn.2d 282, 287, 877 P.2d 195 (1994); *In re Estate of Nelson*, 85 Wn.2d 602, 612, 537 P.2d 765 (1975). As the Director of Research and Chief Reporter for the Editorial Board

[1]RCW 11.12.050 was repealed effective January 1, 1995, Laws of 1994, ch. 221, §§ 72, 75, pp. 1179-80, and was replaced with the "omitted spouse statute," RCW 11.12.095.

of the Uniform Probate Code explained, an omitted spouse statute seeks to provide a share for the surviving spouse in the amount the decedent probably would have wanted to give, had the decedent gotten around to revising the premarital will. Lawrence W. Waggoner, *The Multiple-Marriage Society and Spousal Rights Under the Revised Uniform Probate Code*, 76 Iowa L. Rev. 223, 254 (1991).

In general, the law disfavors revocation of wills. *E.g., In re Estate of Hansen*, 77 Wn. App. 526, 529, 892 P.2d 764, *review granted*, 127 Wn.2d 1021 (1995). However, former RCW 11.12.050 created a rebuttable presumption that a will executed prior to marriage was revoked as to the surviving spouse. Under this statute, a will must be held to be revoked by the testator's subsequent marriage unless one of three situations is present: (1) provision for the surviving spouse was made in a marriage settlement, or (2) the surviving spouse was provided for in the will, or (3) the future spouse was mentioned in the will in such a way as to show an intention not to make provision for her. Former RCW 11.12.050; *In re Estate of Drown*, 60 Wn.2d 110, 113, 372 P.2d 196 (1962); *In re Estate of Hall*, 159 Wash. 236, 238-39, 292 P. 401 (1930).

▪ In this case, there was no marriage settlement, and the wife was not provided for in the will. The sole question then is whether the wife was mentioned in the will *in such a way as to show an intention not to make any provision* for her. This inquiry must be answered from the face of the will, as no extrinsic evidence is admissible to determine the intent of the testator. Former RCW 11.12.050; *In re Estate of McKiddy*, 47 Wn. App. 774, 779, 737 P.2d 317 (1987). Here, if the will did not mention the wife in a way that showed the testator intended to disinherit her, then the presumption of revocation is not rebutted and the will is revoked by operation of law as to the spouse and she would take her intestate share of her husband's estate. *See, e.g., In re Estate of Hansen*, 77 Wn. App. at 528; *In re Estate of Pesterkoff*, 37 Wn. App. 418, 419, 680 P.2d 1062 (1984); RCW 11.04.015.

The daughter argues that the testator's appointment of Ms. Thompson as the alternate executor rebuts the presumption of revocation because she was mentioned by name in the will. The wife argues that she must have been named in the distributive clause of the will before the naming can be considered to be evidence of an intent to disinherit her. Both parties rely on the case of *In re Estate of Steele*, 45 Wn.2d 58, 273 P.2d 235 (1954). In *In re Estate of Steele*, the testator had named his future wife in the distributive clause of the will as the alternate beneficiary of his entire estate if his brother predeceased him. His brother survived him, so the alternate beneficiary did not take under the will. The surviving spouse sought to have the will revoked on the basis of former RCW 11.12.050. The Court held the will was not revoked because naming the surviving spouse in the distributive clause of the will either provided for the surviving spouse, if the contingency matured, or, if the contingency did not mature, showed an intent not to provide for the surviving spouse. Either would be sufficient under the statute to rebut the presumption of revocation. We do not find *In re Estate of Steele* dispositive of the present issue. Naming in the distributive clause of a will shows the testator's intent as to what he wished to leave to the person named, while an appointment as an executor shows little more than that the testator trusted the person so named.

This Court has recently addressed the issue whether disinheriting a spouse in a marriage settlement makes "provision" for that spouse under former RCW 11.12.050. In *In re Estate of Burmeister*, 124 Wn.2d 282, the testator and his wife signed a valid prenuptial agreement providing that neither of them would inherit the separate property or the one-half of the community property of the other. We explained that the "clear written intention in a marriage settlement to disinherit" was sufficient to rebut the presumption of revocation established by then RCW 11.12.050. *In re Estate of Burmeister*, 124 Wn.2d at 287. In the present case, however, there is no clear written intention to disinherit.

Although there is no law directly on point in Washington, there is case law in California on the issue before us. In *In re Ryan's Estate*, 191 Cal. 307, 309, 216 P. 366 (1923), the California Supreme Court was construing a statute which was essentially the same as former RCW 11.12.050. At issue was whether the naming of the surviving spouse as the executrix in a prenuptial will was a provision for her, or sufficiently showed an intention on the part of the testator not to make a testamentary provision and consequently prevent a revocation of the will. The *Ryan* Court held that the appointment of one, whom the testator later married, as executrix was not indicative of his intent not to make provision so as to prevent revocation of the will by marriage. The Court therefore revoked the prenuptial will. The Court explained:

> Nor would the mere naming of [the surviving spouse] as executrix indicate that decedent did not intend to make some gratuitous provision for her upon his death. There would be nothing inconsistent in her acting as executrix and also being a legatee; in fact, it would be most natural in the case of husband and wife. He might have been led to name her his executrix because of his confidence in her ability and integrity, but other considerations would probably influence him in making testamentary provision for her as his wife. We cannot say it appears from this clause of the will that decedent intended not to provide for her even though she should become his wife.

*In re Ryan*, 191 Cal. at 311-12. *See also In re Estate of Paul*, 29 Cal. App. 3d 690, 105 Cal. Rptr. 742 (1972) (holding that a testator's future spouse was not mentioned in his will in such a way as to show an intention not to make provision for her where she was only named as the alternate executor); *In re Estate of Murray*, 145 Cal. App. 3d 324, 328, 193 Cal. Rptr. 355 (1983) (revocation by marriage is a presumption which can be rebutted only by a clear manifestation of intent on the face of the will).

██ ██ We agree that merely naming the person who later becomes the testator's spouse as an alternate execu-

tor is not sufficient to rebut the statutory presumption of revocation because it does not mention the spouse in the will so "as to show an intention not to make such provision." Former RCW 11.12.050. There is no way to tell the intent of the testator from this appointment. It is not sufficient under the former statute simply to mention a future spouse; rather, the spouse must be mentioned in such a way as to show the testator's intent to disinherit that person.

CONCLUSION

We affirm that part of the Court of Appeals decision which holds that the will is revoked by operation of law under former RCW 11.12.050 as to the surviving spouse. We decline to construe the newer statute, RCW 11.12.095, which is not before the Court. The former statute, RCW 11.12.050, applies in this case. Any discussion of the newer statute must await a matter in which it is at issue.

DURHAM, C.J, and DOLLIVER, SMITH, JOHNSON, MADSEN, ALEXANDER, TALMADGE, and PEKELIS, JJ., concur.