105 P.3d 434 (2005)
Laura BAY, Appellant, Cross-Respondent,
v.
ESTATE OF John BAY, Kelly Bay and Eric Bay, Respondents, Cross-Appellants.
No. 52687-1-I.
Court of Appeals of Washington, Division 1.
January 31, 2005.
*435 Larry C. Leonardson, Bothell, WA, for Appellant.
Deanne Minor, Gail B. Nunn, Oloane Nunn & Guthrie PLLC, Everett, WA, for Respondent.
BECKER, J.
Laura Bay, who was not named or provided for in her late husband's will, challenges a trial court's decision to deny her a share of his estate. Although she was presumptively entitled to an intestate share as an "omitted spouse", the statute permits this presumption to be rebutted by clear and convincing evidence "that a smaller share, including no share at all, is more in keeping with the decedent's intent." RCW 11.12.095(3). Substantial evidence in this case supports the court's conclusion that it was more in keeping with the decedent's intent that his estate go entirely to his children. We affirm.
John Bay created a will in 1983, 16 years before his death. The will left everything to Cathy, his wife at the time, then in trust to their children. John's will emphasized his desire that his estate provide for his children's post-secondary education.
John and Cathy divorced in 1986 after having two children, Kelly and Eric. By statute, the divorce revoked any provisions in John's will in favor of Cathy. His estate would pass "as if the former spouse failed to survive the testator". RCW 11.12.051. This left Kelly and Eric as the sole beneficiaries of the will.
John Bay married appellant Laura Bay in November 1999. He changed the beneficiary designation of his 401(k) retirement plan so that Laura was an 80 percent beneficiary. He designated his two children as equal beneficiaries of the remaining 20 percent. John did not make any changes to his will.
John Bay committed suicide in October 2000. At the time, Kelly was 18 and Eric was 15.
It was undisputed that John's 401(k) retirement plan, a non-probate asset, should be distributed according to the percentages he designated. Laura received approximately $290,000, and Kelly and Eric each received their 10 percent share.
John's probate estate was administered by his first wife's brother, who was the personal representative designated by the will. John's probate assets consisted almost entirely of separate property, amounting to a net of some $108,000. The personal representative proposed to distribute this sum equally between Kelly and Eric, with nothing for Laura.
Laura Bay protested the proposed distribution. She claimed that as an omitted spouse she was entitled to her intestate *436 share of the probate estate. Her intestate share under the descent and distribution statute would have been "one-half of the net separate estate" because John was "survived by issue". RCW 11.04.015(1)(b). Laura accordingly proposed that she receive $54,000 from the probate estate, with Kelly and Eric to receive $27,000 each.
The dispute came to the superior court where Judge Thorpe rejected Laura's claim and ordered the $108,000 to be distributed equally between Kelly and Eric Bay. Each child's total receipts, including their shares of the retirement account and some other non-probate accounts, amounted to approximately $100,000. Laura appeals the final order confirming the proposed distribution to the Bay children.
In confirming the distribution of John's set separate estate entirely to his children, the trial court applied Washington's 10-year-old omitted spouse statute, which provides as follows:
(1) If a will fails to name or provide for a spouse of the decedent whom the decedent marries after the will's execution and who survives the decedent, referred to in this section as an "omitted spouse," the spouse must receive a portion of the decedent's estate as provided in subsection (3) of this section, unless it appears either from the will or from other clear and convincing evidence that the failure was intentional.
(2) In determining whether an omitted spouse has been named or provided for, the following rules apply:
(a) A spouse identified in a will by name is considered named whether identified as a spouse or in any other manner.
(b) A reference in a will to the decedent's future spouse or spouses, or words of similar import, constitutes a naming of a spouse whom the decedent later marries. A reference to another class such as the decedent's heirs or family does not constitute a naming of a spouse who falls within the class.
(c) A nominal interest in an estate does not constitute a provision for a spouse receiving the interest.
(3) The omitted spouse must receive an amount equal in value to that which the spouse would have received under RCW 11.04.015 if the decedent had died intestate, unless the court determines on the basis of clear and convincing evidence that a smaller share, including no share at all, is more in keeping with the decedent's intent. In making the determination the court may consider, among other things, the spouse's property interests under applicable community property or quasi-community property laws, the various elements of the decedent's dispositive scheme, and a marriage settlement or other provision and provisions for the omitted spouse outside the decedent's will.
(4) In satisfying a share provided by this section, the bequests made by the will abate as provided in chapter 11.10 RCW.
RCW 11.12.095.
The legislation enacting the current omitted spouse statute repealed the predecessor statute, former RCW 11.12.050. Laws of 1994, ch. 221, §§ 10; 72, effective Jan. 1, 1995. The purpose of the former omitted spouse statute was "to prevent the unintentional disinheritance of the surviving spouse of a testator who marries after making a will and then dies without ever changing it." In re Estate of Deoneseus, 128 Wash.2d 317, 319, 906 P.2d 922 (1995). The new statute has the same purpose, and, like the old statute, it establishes a presumption that the omitted spouse will receive the same amount as if the decedent had died intestate.
The Bay children initially argue that the distribution can be affirmed on the ground that John's "net separate estate" under RCW 11.04.015(1)(b) included not only the $108,000 but also the 401(k) asset worth $290,000. They contend that Laura, as the beneficiary of the $290,000, has already received more than her presumptive half of John's "net separate estate", and therefore it is unnecessary to decide whether there is sufficient evidence to rebut the presumption. But the children have cited no authority for the proposition that a non-probate asset is part of the "net separate estate" discussed in the descent and distribution statute. We conclude the trial court correctly rejected *437 this argument, and found that John's "net separate estate" consisted of the $108,000 in probate.
We are then faced with deciding whether there was sufficient evidence to rebut the presumption that Laura would receive half of the net separate estate of $108,000.
The means of rebutting the presumption provided by the new statute are somewhat more expansive than in the former statute. The new statute is divided into four subsections. The presumption is stated in subsection (3). The first two subsections are concerned with determining whether a spouse, married after the execution of the will, is entitled to the presumption. Subsection (1) states that the spouse "must" receive "a portion" of the decedent's estate as provided in subsection (3), unless the decedent's failure to name or provide for the spouse in the will was intentional. Subsection (2) provides rules for determining whether the will names or provides for the spouse. The first two subsections are not at issue in this case. It is clear that John did not name or provide for Laura in his will, and no one claims that his failure to do so was intentional. Subsection (4) is also not at issue.
Our analysis, therefore, focuses on subsection (3). This part of the statute defines the presumption and states that it can be rebutted by evidence of the decedent's intent. The omitted spouse will receive her intestate share "unless the court determines on the basis of clear and convincing evidence that a smaller share, including no share at all, is more in keeping with the decedent's intent." RCW 11.12.095(3).
The statute provides a non-exclusive list of things the court may consider in relation to this question, including the decedent's dispositive scheme and provisions for the omitted spouse outside of the decedent's will. Here, the trial court considered John's desire to support a college education for his children, an interest he expressed not only in his will but also in the property settlement agreement he made with his first wife. The court made significant findings concerning John's sustained intent in seeing that Kelly and Eric could afford to go to college:
Even before the birth of his second child, Eric, the Decedent evidenced a keen interest in ensuring that his children had the financial ability to complete a college education, including post-graduate work.
Paragraph 3 of Article IV of his Last Will and Testament reads as follows:
At such time as my children have completed their formal education, the trust assets shall be spent sparingly, in the discretion of my Trustee, so that my children do not become dependent upon the trust for their support. It is my desire that each of my children who desire it shall complete a college education, including post-graduate work. Any educational expenditures after the normal four-year bachelor's degree shall be considered as an advancement to be charged against that child's share without interest at distribution.[[1]]
The Decedent's interest in insuring that his children had funds to assist their post-secondary education continued to the time of his divorce from Cathy L. Smith in 1986, where this issue was addressed in their property settlement agreement in paragraph 6.3, which reads in pertinent part as follows:
. . . The parties further acknowledge an obligation to contribute to the extent necessary and not otherwise covered by Trust Funds that shall be set for the children's college education and support hereinafter consistent with their relative financial abilities to do so. If and when such circumstances arise and the parties cannot agree as to what their relative contributions should be, either party has the right to make a motion for a review and determination of what those obligations should be by the jurisdiction in which the custodial parent resides.[[2]]
The court found that both children had excelled in school and in their extracurricular *438 activities.[3]
The court also took into consideration John's gift to Laura of 80 percent of the retirement account, his largest single asset. The court ultimately concluded that the facts set forth in the findings, which are uncontested on appeal, "provide clear and convincing evidence that it was the Decedent's intent for the omitted spouse to receive no share of the Decedent's remaining separate property."[4]
When the burden of proof is "clear, cogent and convincing evidence", the factfinder's determination of an ultimate fact will be upheld on review "if supported by substantial evidence which the lower court could reasonably have found to be clear, cogent and convincing." In re LaBelle, 107 Wash.2d 196, 209, 728 P.2d 138 (1986).
Laura contends that the record falls short of meeting this test. She argues that the will "does not provide any evidence of intent on the part of John to disinherit his surviving spouse."[5]
Laura takes as a premise the rule that the intent of a "testator" is generally determined as of the time of execution of the will. Estate of Campbell, 87 Wash.App. 506, 510, 942 P.2d 1008 (1997). She argues that it is impossible to determine what John as a testator intended with respect to Laura, as he was not married to her when he executed the will. But the issue in this case does not involve the construction of a will. Under the omitted spouse statute, the trial court is concerned with the intent of the "decedent", not the "testator", so the premise stated in Estate of Campbell is inapplicable. The rule that "the testator is presumed to have known the law", In re Patton, 6 Wash.App. 464, 471, 494 P.2d 238 (1972), is unhelpful for the same reason. In a case such as this one, the court may consider manifestations of intent at times other than the execution of the will.
Laura's emphasis on the lack of evidence that John intended to "disinherit" her confuses the potential inquiry under subsection (1) with the inquiry into intent that the court was conducting under subsection (3). Evidence of intent to "disinherit" a new spouse would inform an inquiry under subsection (1), the purpose of which is to determine whether the failure to name or provide for the new spouse in the will was intentional. As discussed above, the trial court concluded under subsection (1) that John's failure to provide for Laura in his will was unintentional. Consequently, Laura was entitled to the presumption that she would receive a full intestate share. The purpose of an inquiry under subsection (3) is to determine whether the presumption  once established  is rebutted by clear and convincing evidence that a smaller share or no share at all is more in keeping with the decedent's intent.
We conclude that John's dispositive scheme, his property settlement agreement with his former wife, and the provision he made for Laura outside the will, provide substantial evidence that the trial court could reasonably have found to be clear, cogent and convincing evidence in support of rebutting the presumption.
A statute authorizes a discretionary award of attorney fees to any party "in such amount and in such manner as the court determines to be equitable" at the superior court or in the appellate court. RCW 11.96A.150(1). Laura Bay requested fees below, and she assigns error to the trial court's failure to grant that request. Both sides request an award of fees on appeal.
The trial court concluded it was equitable that "each beneficiary should pay all fees incurred by that beneficiary."[6] We will not disturb that decision. The same result is equitable on appeal. As the court stated below, the case involves a simple difference of opinion as to the application of a new statute that is not so clear as to make the litigation seem unnecessary or unreasonable.
Affirmed.
WE CONCUR: BAKER and KENNEDY, JJ.
NOTES
[1] Finding of fact 14, Clerk's Papers at 36.
[2] Finding of fact 15, Clerk's Papers at 36.
[3] Findings of fact 16 and 17.
[4] Conclusion of law 2, Clerk's Papers at 37-38.
[5] Brief of Appellant at 14.
[6] Conclusion of Law 4, Clerk's Papers at 38.