151 P.3d 995 (2006)
In re the ESTATE of Anita E. MOI, Deceased.
Terry A. Nelson, Appellant,
v.
Ronald E. Jusenius, Respondent.
No. 32838-1-II.
Court of Appeals of Washington, Division 2.
October 31, 2006.
Publication Ordered February 5, 2007.
*996 Robert Kevin Dawson, DawsonBrown PS, Seattle, WA, Debra Leigh Williams Stephens, Spokane, WA, for Appellant.
Christopher A. Benson, Federal Way, WA, Scott E. Feir, Montgomery Purdue Blankinship & Austin, Seattle, WA, for Respondent.
Panel: ARMSTRONG, P.J., QUINN-BRINTNALL and PENOYAR, JJ.
PENOYAR, J.
¶ 1 Terry A. Nelson appeals a superior court decision finding that he was not entitled to an intestate share of his deceased wife's estate because he was not an "omitted spouse" under RCW 11.12.095. We affirm.

FACTS
I. BACKGROUND
¶ 2 Around 1992, Anita Moi won approximately 14 million dollars in the Washington State Lottery. At the time, she was married to Obert "Hap" Moi, Jr., who had six children from a previous marriage. After 26 years of marriage, Hap[1] died in 1995.
¶ 3 Nelson met Moi in the spring of 1997. They began living together shortly thereafter but did not marry until September 3, 2002. Nelson quit his job when he moved in with Moi because Moi wanted to take care of him and had the means to do so. Moi was generous with her winnings and gave gifts to many friends and family members.
¶ 4 In April 1998, Moi's brother, Ronald Jusenius, arranged for Moi to meet with estate planning attorney Marv Strasburg to draft her will. On June 25, 1998, Moi executed the final version of her will. She made specific bequests of $100,000 to Nelson; $50,000 to a friend, Donna Mori; and another $50,000 to Hap's brother, James Moi. According to Strasburg, Moi wanted to leave generous gifts to these three and she did not consider the bequests nominal. Moi directed that the residue of her estate be divided into two equal portions. One half went to her two brothers, to share equally; the other half was to be divided equally among her six stepchildren. Moi named Jusenius as her personal representative.
¶ 5 In May of 2000, Moi met with Strasburg again to discuss some changes to her will and a pre-nuptial agreement because she and Nelson were considering getting married. After this meeting, Strasburg prepared a codicil to the will and a pre-nuptial agreement. The only change the codicil would have made was to delete the $50,000 specific bequest to James Moi, who had died. Moi assured Strasburg that she would not marry Nelson without finalizing the pre-nuptial agreement.
¶ 6 Moi never contacted Strasburg after this May 2000 meeting. The marriage license Moi and Nelson obtained in March 2000 expired without them marrying. Moi apparently never executed the codicil.
¶ 7 Nelson and Moi were eventually married in their home on September 3, 2002 in a small ceremony with only two witnesses. They intended the wedding to be a surprise.
¶ 8 On October 1, 2002, a few weeks after the wedding, Moi died unexpectedly.[2] Nelson estimated the value of Moi's estate at about seven million dollars.
II. PROCEDURAL HISTORY
¶ 9 Jusenius submitted Moi's 1998 will for probate on October 8, 2002. In January 2003, Nelson petitioned the court to declare him an omitted spouse under RCW 11.12.095 *997 so that he could receive an intestate share of Moi's estate.
¶ 10 In December 2004, both sides moved for summary judgment on the legal issue of whether Nelson was an omitted spouse under the statute. The trial court granted Jusenius's motion and denied Nelson's. The trial court determined that because Nelson was named in the will and given $100,000, he was provided for so the omitted spouse statute did not apply. Nelson now appeals.

ANALYSIS
I. WASHINGTON'S OMITTED SPOUSE STATUTE
¶ 11 This case involves interpreting RCW 11.12.095, which states:
(1) If a will fails to name or provide for a spouse of the decedent whom the decedent marries after the will's execution and who survives the decedent, referred to in this section as an "omitted spouse," the spouse must receive a portion of the decedent's estate as provided in subsection (3) of this section, unless it appears either from the will or from other clear and convincing evidence that the failure was intentional.
(2) In determining whether an omitted spouse has been named or provided for, the following rules apply:
(a) A spouse identified in a will by name is considered named whether identified as a spouse or in any other manner.
(b) A reference in a will to the decedent's future spouse or spouses, or words of similar import, constitutes a naming of a spouse whom the decedent later marries. A reference to another class such as the decedent's heirs or family does not constitute a naming of a spouse who falls within the class.
(c) A nominal interest in an estate does not constitute a provision for a spouse receiving the interest.
(3) The omitted spouse must receive an amount equal in value to that which the spouse would have received under RCW 11.04.015 if the decedent had died intestate, unless the court determines on the basis of clear and convincing evidence that a smaller share, including no share at all, is more in keeping with the decedent's intent. In making the determination the court may consider, among other things, the spouse's property interests under applicable community property or quasi-community property laws, the various elements of the decedent's dispositive scheme, and a marriage settlement or other provision and provisions for the omitted spouse outside the decedent's will.
(4) In satisfying a share provided by this section, the bequests made by the will abate as provided in chapter 11.10 RCW.
RCW 11.12.095.
¶ 12 The current omitted spouse statute took effect January 1, 1995. Laws of 1994, ch. 221 §§ 10, 75. The legislation enacting this statute repealed the predecessor statute, former RCW 11.12.050. Laws of 1994, ch. 221, §§ 10, 72.
¶ 13 An omitted spouse statute's purpose is "to prevent the unintentional disinheritance of the surviving spouse of a testator who marries after making a will and then dies without ever changing it." In re the Estate of Deoneseus, 128 Wash.2d 317, 319, 906 P.2d 922 (1995). The new statute, like the old one, establishes a presumption that the omitted spouse will receive the same amount as if the decedent had died intestate. In re the Estate of Bay, 125 Wash.App. 468, 472-73, 105 P.3d 434 (2005).
¶ 14 The means of rebutting the presumption the new statute provides are somewhat more expansive than in the former statute. Bay, 125 Wash.App. at 473, 105 P.3d 434. The presumption is stated in subsection (3). Bay, 125 Wash.App. at 473, 105 P.3d 434. The first two subsections concern whether a spouse who married the testator after the will's execution is entitled to the presumption. Bay, 125 Wash.App. at 473, 105 P.3d 434.
¶ 15 In performing an analysis under RCW 11.12.095, we first ask if the will names or provides for a spouse. See RCW 11.12.095(1). If the spouse is named and provided for, then the spouse is not omitted and the inquiry ends. RCW 11.12.095(1). RCW 11.12.095(2) gives the rules for determining *998 whether an omitted spouse has been named and provided for.
¶ 16 Despite the statute's use of the word "or," a spouse must be both named and provided for in order not to be considered an omitted spouse. See In re the Estate of Deoneseus, 76 Wash.App. 656, 659, 886 P.2d 1155 aff'd, 128 Wash.2d 317, 906 P.2d 922 (1995). The statute specifically says, "[a] nominal interest in an estate does not constitute a provision for a spouse receiving the interest." RCW 11.12.095(2)(c). If the statute intended for the mere naming of a spouse in a will to preclude revocation, section (c) would be inconsistent. Deoneseus, 76 Wash. App. at 660, 886 P.2d 1155.
II. STANDARD OF REVIEW AND BURDEN OF PROOF
¶ 17 We review summary judgment orders de novo, performing the same inquiry as the trial court. Hisle v. Todd Pac. Shipyards Corp., 151 Wash.2d 853, 860, 93 P.3d 108 (2004). In conducting this inquiry, we must view all facts and reasonable inferences in the light most favorable to the nonmoving party. Hisle, 151 Wash.2d at 860, 93 P.3d 108. Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Hisle, 151 Wash.2d at 861, 93 P.3d 108.
III. THE "CONTEMPLATION OF MARRIAGE" TEST IN WASHINGTON
A. General Rule
¶ 18 According to the "contemplation of marriage" rule, an antenuptial will is not revoked when the testator contemplated marriage to the devisee at the time the testator made the will. See In re the Estate of Adler, 52 Wash. 539, 542, 100 P. 1019 (1909). The omitted spouse statute is intended to prevent a surviving spouse's unintentional disinheritance. Bay, 125 Wash.App. at 472, 105 P.3d 434. If the testator contemplated marrying the devisee when she drafted the will, then she is presumed to have provided for the devisee as a spouse and not as a mere friend or employee. See In re the Estate of Poisl, 44 Cal.2d 147, 149-50, 280 P.2d 789 (1955). If marriage was not contemplated, then in many jurisdictions, the will is revoked even though a spouse is named and provided for, on the theory that the testator would provide more generously for a spouse than she would for a mere friend. See Poisl, 44 Cal.2d at 149-50, 280 P.2d 789.
¶ 19 Washington has rejected the "contemplation of marriage" test. In re the Estate of Steele, 45 Wash.2d 58, 61, 273 P.2d 235 (1954); Adler, 52 Wash. at 547, 100 P. 1019 (declining to read a contemplation of marriage provision into a statute where the legislature did not expressly provide it). This distinguishes Washington from other states. MARK REUTLINGER, WASHINGTON LAW OF WILLS AND INTESTATE SUCCESSION 127 (2006); see Poisl, 44 Cal.2d at 149-50, 280 P.2d 789 (reading a contemplation of marriage requirement into a statute with the similar language as the statute in Adler).
B. Nelson's Arguments
1. Historical Presumptions about the Testator's Intent
¶ 20 Nelson essentially asks us to read a contemplation of marriage test into the current statute. He claims that Washington has actually followed a "contemplation test" under the analogous pretermitted heir statute. He argues that the 1994 legislation adopting the current omitted child and omitted spouse statutes supports his interpretation. He urges us to read RCW 11.12.095 as requiring evidence that the testator intended to provide for a spouse, rather than a person of lesser capacity.
¶ 21 Nelson argues that the trial court's interpretation of RCW 11.12.095 is contrary to the goal of effectuating the testator's intent. He states that under the trial court's interpretation, a named spouse may never be granted an intestate share of the estate if the antenuptial will contains a devise, however small, to that spouse. Nelson claims this reading is antithetical to the statute's purpose of awarding an intestate share when the testator failed to consider the effect of his marriage on his old will.
*999 ¶ 22 Nelson argues that the prior omitted spouse statute, former RCW 11.12.050,[3] effectively contained a contemplation of marriage test because it identified three situations in which a pre-nuptial will remained valid after marriage: (1) where the spouse was provided for by other settlement, (2) where the will itself provides for the spouse, or (3) where the will references the spouse in a way that indicates the testator did not intend to provide for the spouse. He claims that the current statute's requirement that the will "name or provide for" a spouse is a more concise statement of these three scenarios.
¶ 23 Nelson also argues that reading the new RCW 11.12.095 to contain a contemplation of marriage test is consistent with modern omitted spouse statutes, including the Uniform Probate Code (UPC).[4]
¶ 24 Nelson further claims that the current statute retains the historical sense of the omitted spouse statute because the current statute distinguishes situations in which the testator unintentionally failed to account for a later spouse from those situations in which a change in family circumstances was contemplated.
2. Parallel Language from the Pretermitted Heir Statute
¶ 25 Nelson cites to a case interpreting the former pretermitted heir statute[5] to support his claim that a testator must contemplate marriage in order for a devise before marriage to be valid. See In re the Estate of Hamilton, 73 Wash.2d 865, 441 P.2d 768 (1968). In Hamilton, the testator's adopted daughter was not "named or provided for" because the will only named her as a stepdaughter. Hamilton, 73 Wash.2d at 867-68, 441 P.2d 768. Several years after the will was executed, she became the testator's legal child and obtained the legal rights of an heir. Hamilton, 73 Wash.2d at 867, 441 P.2d 768. Because nothing indicated that the testator contemplated later adopting her when he made his will, she was an omitted heir. Hamilton, 73 Wash.2d at 867-68, 441 P.2d 768.
¶ 26 Nelson claims that the legislature intended to adopt Hamilton's logic when it used the "name or provide for" language in *1000 the current omitted spouse and pretermitted heir statutes. He argues that under RCW 11.12.095(2)(a) and (b), the will must refer to the devisee as a spouse or future spouse in order for the will to "provide for" a spouse. He urges us to look at the testator's intent and argues that his specific bequest is not dispositive of Moi's intent.
C. Analysis
1. Contemplation of Marriage Not Required
¶ 27 As we previously explained, Washington has rejected the "contemplation of marriage" test. Steele, 45 Wash.2d at 61, 273 P.2d 235. Furthermore, the current statute specifically says that a spouse identified by name is considered named whether identified as a spouse or "in any other manner." RCW 11.12.095(2)(a). This shows that the legislature intended any naming, including naming as a friend or employee, to suffice as being named. See Pitzer v. Union Bank of California, 141 Wash.2d 539, 546 n. 3, 9 P.3d 805 (2000) (testator's children were named in his will even though they were named as nieces and nephews instead of as children).
¶ 28 Instead of adding an explicit contemplation of marriage requirement, like that contained in the UPC, our legislature revised Washington's statute to specifically state that a spouse need not be named as a spouse but can be named in "any other manner." See RCW 11.12.095(2)(a). Therefore, we reject Nelson's argument that the statute contains an implied contemplation of marriage test.
¶ 29 We also reject Nelson's argument that the former omitted child statute is relevant to the analysis of the current omitted spouse statute. The previous versions of the two statutes used different language and were interpreted differently. See Hamilton, 73 Wash.2d at 868, 441 P.2d 768. In Hamilton, the court found the devisee was an omitted child, even though she was named in the will, because she was named as a stepdaughter and not as the testator's child. Hamilton, 73 Wash.2d at 868, 441 P.2d 768.
¶ 30 The Hamilton court specifically distinguished its holding from Steele, a case interpreting the omitted spouse statute, because that statute was "considerably different." Hamilton, 73 Wash.2d at 868, 441 P.2d 768. In Steele, the court found that the spouse was named and provided for when the antenuptial will named her as a contingent beneficiary. Steele, 45 Wash.2d at 60-61, 273 P.2d 235. She was not unintentionally omitted. Steele, 45 Wash.2d at 61, 273 P.2d 235. Whether the testator contemplated the subsequent marriage and provided for her as a spouse or in some other capacity was irrelevant. Steele, 45 Wash.2d at 61, 273 P.2d 235.
¶ 31 We also reject Nelson's argument that the legislature intended to adopt Hamilton's holding in the new omitted spouse statute. Examination of the language of the new statute demonstrates that the opposite is true. Both the current omitted spouse statute and the current omitted child statute now say that a spouse or child identified by name is considered named "whether identified as a child/spouse or in any other manner." RCW 11.12.091(2)(a), 11.12.095(2)(a). This change in language has changed the law as to pretermitted children. Pitzer, 141 Wash.2d at 546 n. 3, 9 P.3d 805.
2. Was Nelson "Named" and "Provided for"?
¶ 32 Nelson was properly named in the will because the will identifies him by name. We reject his arguments that he needed to be provided for as a spouse or in contemplation of marriage. The statute states, "[a] spouse identified in a will by name is considered named whether identified as a spouse or in any other manner." RCW 11.12.095(2)(a).
¶ 33 Although the will names Nelson specifically, we next must determine whether the will "provides" for him. "A nominal interest in an estate does not constitute a provision for a spouse receiving the interest." RCW 11.12.095(2)(c). The statute does not define what constitutes a "nominal interest."
¶ 34 Jusenius argues that a $100,000 gift is not nominal and urges us to hold that Nelson has been provided for. The statute speaks of a "nominal interest in an estate," not simply a "nominal amount" or a "nominal bequest." Thus, we must consider both the amount of *1001 the devise and its percentage of the overall estate. A reviewing court is required, whenever possible, to give effect to every word in a statute. City of Olympia v. Drebick, 156 Wash.2d 289, 295, 126 P.3d 802 (2006) (quoting Dennis v. Dep't of Labor & Indus., 109 Wash.2d 467, 479, 745 P.2d 1295 (1987)). Nelson does not argue that his bequest was only nominal in either sense  he argued only that he was not provided for as a spouse, not that the gift itself was nominal. We therefore need not define what constitutes a nominal interest because the parties apparently agree that Nelson's bequest is more than a nominal interest. Because Nelson's bequest was not nominal, we hold that Nelson was provided for.
IV. ATTORNEY FEES
¶ 35 Nelson requests attorney fees under RCW 11.96A.150,[6] which gives us discretion to award costs and attorney fees as we deem equitable.
¶ 36 Generally, we will not assess fees against an estate when the litigation could result in no substantial benefit to the estate. In re the Estate of Niehenke, 117 Wash.2d 631, 648, 818 P.2d 1324 (1991). Nelson's attempt to take a larger share of the estate did not benefit the estate, and so we decline to award him attorney fees.
¶ 37 Affirmed.
We concur: QUINN-BRINTNALL, C.J., and ARMSTRONG, J.
NOTES
[1] We use first names where necessary to avoid confusion. No disrespect is intended.
[2] The death certificate lists the cause of death as atherosclerotic cardiovascular disease.
[3] Former RCW 11.12.050 (1994) stated:

If, after making any will, the testator shall marry and the spouse shall be living at the time of the death of the testator, such will shall be deemed revoked as to such spouse, unless provision shall have been made for such survivor by marriage settlement, or unless such survivor be provided for in the will or in such way mentioned therein as to show an intention not to make such provision, and no other evidence to rebut the presumption of revocation shall be received. A divorce, subsequent to the making of a will, shall revoke the will as to the divorced spouse.
[4] UNIF. PROBATE CODE § 2-301(a) (amended 1993) states:

If a testator's surviving spouse married the testator after the testator executed his [or her] will, the surviving spouse is entitled to receive, as an intestate share, no less than the value of the share of the estate he [or she] would have received if the testator had died intestate as to that portion of the testator's estate, if any, that neither is devised to a child of the testator who was born before the testator married the surviving spouse and who is not a child of the surviving spouse nor is devised to a descendant of such a child or passes under sections 2-603 or 2-604 to such a child or to a descendant of such a child, unless:
(1) it appears from the will or other evidence that the will was made in contemplation of the testator's marriage to the surviving spouse;
(2) the will expresses the intention that it is to be effective notwithstanding any subsequent marriage; or
(3) the testator provided for the spouse by transfer outside the will and the intent that the transfer be in lieu of a testamentary provision is shown by the testator's statements or is reasonably inferred from the amount of the transfer or other evidence.
[5] Former RCW 11.12.090 (1994) stated:

If any person make his last will and die leaving a child or children or descendants of such child or children not named or provided for in such will, although born after the making of such will or the death of the testator, every such testator, as to such child or children not named or provided for, shall be deemed to die intestate, and such child or children or their descendants shall be entitled to such proportion of the estate of the testator, real and personal, as if he had died intestate, and the same shall be assigned to them, and all the other heirs, devisees and legatees shall refund their proportional part.
[6] RCW 11.96A.150(1) provides:

Either the superior court or the court on appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings. The court may order the costs to be paid in such amount and in such manner as the court determines to be equitable.